**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. 20-00227(TSC)** |
| | : | |
| **KHALED HAMDAOUI,** | : | |
| **Also known as "JAN ROSSO,"** | : | |
| | : | |
| **Defendant.** | : | |

**GOVERNMENT'S MEMORANDUM**
**IN SUPPORT OF PRETRIAL DETENTION**

The United States of America, by and through its attorney, the United States Attorney for

the District of Columbia, hereby submits this Memorandum in support of its Motion for Pretrial

Detention of Defendant KHALED HAMDAOUI under 18 U.S.C. § 3142(f)(2)(A).

**APPLICABLE LAW**

A defendant must be detained pending trial, if the Court determines that no condition or

combination of conditions "will reasonably assure the appearance of the person as required and

the safety of any other person and the community . . . ."  18 U.S.C. § 3142(e).  A finding of either

risk of flight or danger is sufficient for detention.  *See, e.g., United States v. Ferranti*, 66 F.3d 540,

543-44 (2nd Cir. 1995).  For a detention decision based upon a defendant's dangerousness, the

government must prove by clear and convincing evidence that there are no conditions or

combinations of conditions that will assure the safety of the community.  *See* 18 U.S.C. § 3142(f);

*United States v. Smith*, 79 F.3d 1208, 1209 (D.C. Cir. 1996).  For a detention decision based upon

risk of flight, the government only need prove by a preponderance of the evidence that there are

no conditions or combinations of conditions that will assure the defendant's appearance as

required.  *United States v. Vortis*, 785 F.2d 327, 328-29 (D.C. Cir. 1986); *United States v. Xulam*,

84 F.3d 441, 442 (D.C. Cir. 1996).  Furthermore, at a detention hearing, the government may

present evidence by way of a proffer.  *United States v. Smith*, 79 F.3d 1208, 1209-10 (D.C. Cir. 1996).

In considering whether there are conditions of release, which will reasonably assure the safety of any other person and the community, and the appearance of the defendant as required, the Court should consider and weigh the following factors: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release.  18 U.S.C. § 3142(g).  As set forth more fully below, these factors weigh in favor of detaining the defendant.

## FACTUAL BACKGROUND

Between on or about February 28, 2017 and November 8, 2018, defendant HAMDAOUI, a national of Tunisia residing in Istanbul, Republic of Turkey, using the social media account name "Jan Rosso," offered to sell and did sell forged or altered U.S. passports, U.S. Lawful Permanent Resident ("LPR") cards, and U.S. visas to individuals who contacted him through social media.[1] Defendant HAMDAOUI was not an employee of the Department of Homeland Security ("DHS") or the Department of State ("DOS") and has no lawful authority to issue U.S. passports, visas, permits, border crossing cards, alien registration receipt cards, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States.

Homeland Security Investigations ("HSI") first became aware of defendant HAMDAOUI's illegal activities in October 2017, when a Syrian national ("Individual-1") attempted to board a flight

---

1 A U.S. lawful permanent resident card, also known as an "LPR card," "alien registration receipt card," "green card," or "I-551," is a document that is proof of U.S. residency.  LPR cards are lawfully issued by the U.S. Department of Homeland Security ("DHS"), headquartered in Washington, DC.  A U.S. passport is an identification and travel document available to U.S. citizens.  U.S. passports are lawfully issued by the U.S. Department of State ("DOS"), headquartered in Washington, DC.  A U.S. visa is a document placed into a traveler's passport that allows a citizen of a foreign country to enter the United States. U.S. visas are lawfully issued by DOS.

from Germany to Halifax, Canada, using fraudulent documents. Specifically, German authorities discovered that Individual-1 was in possession of a fraudulent Syrian passport and counterfeit U.S. Permanent Resident Card ("I-551"). Individual-1 informed investigators that his intended destination was the United States. Individual-1 stated he received the fraudulent documents, including the counterfeit I-551, from an individual in Istanbul, Turkey, known to him as "Jan Rosso." According to Individual-1, "Jan Rosso" used Facebook to advertise European passports and U.S. I-551 documents for sale. Individual-1 stated that he communicated with "Jan Rosso" on Viber and Facebook Messenger to arrange the purchase of fraudulent documents. The fraudulent documents were mailed to Individual-1 from KHALED HAMDAOUI using an address in Istanbul, Turkey.

Subsequent investigation confirmed that Individual-1 sent two payments to HAMDAOUI by Western Union on or about May 18, 2017, and June 14, 2017, for approximately $705.05 and $448.24. Defendant HAMDAOUI retrieved the funds from Western Union on or about May 19, 2017, in Istanbul, Turkey, utilizing his Tunisian passport with his real name as his form of identification.

Additional analysis of records from Western Union revealed that beginning in 2014, HAMDAOUI received a total of 14 Western Union transfers from senders located in Germany, The Netherlands, France, Iraq, Ukraine, Jordan, and Turkey. The records also revealed that HAMDAOUI retrieved funds from Western Union in multiple countries, including Tunisia, Ukraine, and Malaysia in 2014; Ukraine in 2015; and Ukraine and Turkey in 2017.

In or around November 2017, an HSI undercover agent ("UCA") initiated contact with the operator of the "Jan Rosso" account. As noted above, HSI identified HAMDAOUI as the operator of the "Jan Rosso" account. The UCA utilized Facebook Messenger to privately communicate with HAMDAOUI. The UCA asked HAMDAOUI if he had any U.S. documents for sale that could be

used by the UCA after entering the United States.  HAMDAOUI informed the UCA that he could provide an I-551 for the price of $1,100.00.  The UCA sent HAMDAOUI a photograph, biographical information, and a payment of $1,000 by Western Union.

On or about January 26, 2018, HAMDAOUI informed the UCA that a package containing the I-551 had been shipped from Turkey to an address provided by the UCA.  On February 5, 2018, HSI received the package from a foreign law enforcement liaison in Sterling, Virginia.  HSI special agents found the package held one I-551 that had been embedded with the photograph, signature and biographic information provided by the UCA to HAMDAOUI.  On February 7, 2018, HSI special agents transported the package to the HSI Forensic Document Lab for analysis, which subsequently confirmed the I-551 was counterfeit.

On or about January 2, 2018, and October 25, 2018, HSI special agents executed search warrants on the "Jan Rosso" account used by HAMDAOUI.  A review of the search warrant returns revealed thousands of pages of conversations between HAMDAOUI and clients seeking to purchase fraudulent documents, including U.S. travel documents.

In these conversations, HAMDAOUI and his customers discussed the purchase price of documents, HAMDAOUI asked for biographical information and photos to be included on the documents, and HAMDAUOI sent photos of the documents once they were completed.  A review of the search warrant returns, further indicates that the ROSSO ACCOUNT interacted with over 2,000 prospective clients.

Additionally, in the communications HAMDAOUI was clear with prospective clients that he has no lawful authority to issue green cards or passports.  For example, in one exchange, on May 5, 2017, a Facebook user herein identified as Individual-2 contacted the ROSSO ACCOUNT seeking a visa for Germany.  Individual-2 asked if the ROSSO ACCOUNT could obtain a quicker

appointment at the embassy, to which the ROSSO ACCOUNT replied, "No brother, I have forged visas." When asked why he would then advertise visas, the ROSSO ACCOUNT responded, "Brother, I am advertising visas, passports and identity cards. So it is clear that I am a forger."

Additionally, HAMDAOUI told one client that he hoped he would not be arrested but had a plan for deleting information from his phone if he was. When asked by another client where he learned how to forge documents, HAMDAOUI responded "forging documents was my hobby since I was of young age. In 2014 I learned from a professional forger here in Istanbul. [...] From the most professional forgers in Istanbul." HAMDAOUI told a third client, "I don't receive money under my name. I always use names of others who have nothing to do with the business. So, if I were to be arrested, there is no evidence against me, such as money transfer and such things."

In November 2019, HAMDAOUI was arrested in Austria after presenting a false Colombian passport to officials with fake Schengen entry and exit stamps. Austrian officials conducted a record check and learned HAMDAOUI was the subject of a German arrest warrant. HAMDAOUI was returned to Germany, and on April 15, 2020, a German Court sentenced HAMDAOUI to imprisonment of 1 year and 4 months in Germany for acquiring false identification documents and smuggling aliens. The sentence was suspended and HAMDAOUI remained in Germany.

In September 2020, HSI interviewed HAMDAOUI in Germany. The interview was conducted in English and held in a conference room in a German police station. HAMDAOUI came to the interview on his own, and HSI paid for a train ticket. HAMDAOUI was not in custody and was not in handcuffs. HAMDAOUI was told the interview was voluntary and signed an English-language foreign advice of rights form. During the interview, HAMDAOUI admitted that he was the sole operator of the Jan Rosso Facebook account. HAMDAOUI told the agent that he knowingly sold fraudulent documents, but he said that the documents were created/altered by a different

individual with whom he worked.  Additionally, HAMDAOUI admitted that he had purchased airline tickets so that he could get past security in an airport in Turkey in order to pass fraudulent documents in person to his clients and that he shipped fraudulent documents to his clients using DHL.

On October 21, 2020, a grand jury in the U.S. District Court for the District of Columbia indicted HAMDAOUI on one count of Conspiracy to Commit Passport Forgery and Counterfeiting, Visa Fraud, and to Defraud the United States; two counts of Passport Fraud; and 14 counts of Visa Fraud.

The United States subsequently requested that HAMDAOUI be extradited from Germany. A Germany court approved the extradition request for all counts in the indictment except two which it found to be related to the German charges for which HAMDAOUI was already convicted.[2] Accordingly, extradition was not approved for counts 2 and 4 of the indictment, one charge of passport fraud and one count of visa fraud. Extradition was approved for the remaining counts of the indictment, conspiracy, one count of passport fraud, and 13 counts of visa fraud.

On February 17, 2022, HAMDAOUI was extradited to the United States by Germany.

## ARGUMENT

**The Defendant Should Be Detained Pending Trial Because He Poses a Substantial Risk of Flight.**

Considering the conduct in this case, including the defendant professed ability to manufacture and acquire fraudulent travel documents, the defendant's lack of lawful employment, the defendant's lack of ties to the United States, and the penalties the defendant faces, pretrial detention is necessary to ensure that the defendant does not flee to evade prosecution.

---

2 Specifically, the German court denied the extradition for charges related to HAMDAOUI's dealings with one of his client's, M.D., because it found that HAMDAOUI had been convicted in Germany for acts related to M.D. Additionally, the German court denied extradition for the conspiracy charge as it related to overt acts concerning M.D., but approved extradition for the conspiracy charge as it related to several other individuals.

**A.      The nature and circumstances of the offense**

The nature and circumstances of the offense weigh in favor of detention for several reasons.

The grand jury found probable cause to believe that the defendant violated 18 U.S.C. § 371 (Conspiracy to Commit Passport Forgery and Counterfeiting, Visa Fraud, and to Defraud the United States); two counts of 18 U.S.C. § 1543 (Passport Forgery, Counterfeiting, and Use of False Passport); and 14 counts of 18 U.S.C. § 1546 (Visa Fraud).

These offenses involve deception.  Notably, "[t]o conspire to defraud the United States means primarily to cheat the government out of property or money, but it also means to interfere with or obstruct one of its lawful governmental functions by deceit, craft or trickery, or at least by means that are dishonest."  Hammerschmidt v. United States, 265 U.S. 182, 188 (1924).

If the defendant was willing to deceive such authorities when he repeatedly sold fraudulent documents to numerous individuals, there is no reason to believe that he will not deceive the Court if he vows to return to court to face a trial and a jail sentence.

The charges against the defendant expose him to a considerable period of incarceration. Passport Forgery and Visa Fraud each carry maximum penalties of ten years incarceration. Moreover, under the U.S. Sentencing Guidelines, if convicted after trial HAMDAOUI faces 37 to 46 months of incarceration, assuming a criminal history category of I.  If the government were to seek an upward departure based on the existence of foreign convictions, this range could be higher.

**B.  The weight of the evidence against the defendant**

The weight of the evidence against the defendant is strong.  The evidence consists of the defendant's incriminating electronic communications, obtained by search warrant, in which the defendant offered to sell fraudulent documents to numerous clients.  The defendant communicated with an HSI UCA with whom he negotiated the price for fraudulent I-551, requested that the UCA

provide a photograph and biographical information, and then sent the UCA a package containing the fraudulent I-551.  The evidence also includes a positive identification of HAMDAOUI by a client to whom he sold forged documents and a confession given to an HSI agent in which HAMDAOUI admitted he had sold forged U.S. travel documents.  The weight of the evidence favors detention.

### C.  The history and characteristics of the Defendant

The history and characteristics of the defendant also weigh in favor of detention.

The defendant has no connection to the United States and accordingly no permanent address in this country.  The defendant is a Tunisian national who lived in Istanbul Turkey in 2017 and 2018 until he was arrested in 2019 in Austria after presenting a false Colombian passport to officials with fake Schengen entry and exit stamps.  HAMDAOUI was then transported to Germany, where he was the subject of a German arrest warrant and was convicted in Germany and sentence to imprisonment of 1 year and 4 months for acquiring false identification documents and smuggling aliens.  HAMDAOUI remained in Germany until he was extradited to the United States. He is only in the United States to face to criminal prosecution.

Additionally, HAMDAOUI has professed repeatedly that he is an expert document forger. He told one client that he has forging documents since he was a child and learned from one of the most professional document forgers in Istanbul.  It is no surprise that he self-servingly minimized his involvement in the actual forging of documents when he was interviewed by HSI.  Whether HAMDAOUI created the forged documents himself or worked closely with other forgers, he is very familiar with handling and using false travel documents, which add to his risk of flight, given that conditions such as the seizure of his passport could not assure his appearance at trial.

The defendant's criminal conduct in this case, his lack of lawful employment, permanent

address or ties to the United States, and the penalties the defendant faces, strongly weigh against his release.

## CONCLUSION

For the reasons noted above, the government respectfully submits that a preponderance of the evidence establishes that the defendant is a serious risk of flight and no conditions or combinations of conditions will assure his appearance in Court. Accordingly, the government respectfully requests that the Court grant the government's motion to detain the defendant pending trial in this case.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: _____/s/_____
BRENDA J. JOHNSON
Assistant United States Attorney
D.C. Bar No. 370737
555 Forth St., N.W.
Washington DC 20530
(292) 252-7801
Brenda.Johnson@usdoj.gov

By: _____/s/_____
BRIAN MORGAN
Trial Attorney
New York Bar No. 82960
U.S. Department of Justice, Criminal Division
1301 New York Avenue
Washington DC 20530
(202) 305-3717
Brian.Morgan@usdoj.gov