UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | Criminal No. 20-cr-00227(TSC) |
| | : | |
| **KHALED HAMDAOUI,** | : | |
| Also known as "JAN ROSSO," | : | |
| | : | |
| **Defendant.** | : | |

### GOVERNMENT'S MEMORANDUM IN AID OF SENTENCING

The United States, by and through its attorney, the United States Attorney for the District of Columbia, respectfully files this memorandum to aid the Court in its sentencing decision. On June 29, 2022, the defendant pleaded guilty to Counts 3 and 5 through 17 of the Indictment,[1] charging him with passport forgery, counterfeiting and use of false passport, visa fraud, and aiding and abetting and causing an act to be done in violation of 18 U.S.C. § 1543, 18 U.S.C. § 1546, and 18 U.S.C. § 2.

The defendant's sentencing guidelines range as estimated by the government is 18-24 months. For the reasons stated below, the government recommends that the Court sentence the defendant to 24 months of incarceration.

### FACTUAL BACKGROUND

Between on or about February 28, 2017 and November 8, 2018, defendant HAMDAOUI, a national of Tunisia residing in Istanbul, Republic of Turkey, using the social media account name "Jan Rosso," offered to sell and did sell forged or altered U.S. passports, U.S. Lawful Permanent

---

[1] The defendant did not enter a plea agreement with the government, but the government has agreed to dismiss Counts 1, 2 and 4 at sentencing.

Resident ("LPR") cards, and U.S. visas to individuals who contacted him through social media.[2] Defendant HAMDAOUI was not an employee of the Department of Homeland Security ("DHS") or the Department of State ("DOS") and has no lawful authority to issue U.S. passports, visas, permits, border crossing cards, alien registration receipt cards, or other document prescribed by statute or regulation for entry into or as evidence of authorized stay or employment in the United States.

Homeland Security Investigations ("HSI") first became aware of defendant HAMDAOUI's illegal activities in October 2017, when a Syrian national ("Individual-1") attempted to board a flight from Germany to Halifax, Canada, using fraudulent documents. Specifically, German authorities discovered that Individual-1 was in possession of a fraudulent Syrian passport and counterfeit U.S. Permanent Resident Card ("I-551"). Individual-1 informed investigators that his intended destination was the United States. Individual-1 stated he received the fraudulent documents, including the counterfeit I-551, from an individual in Istanbul, Turkey, known to him as "Jan Rosso." According to Individual-1, "Jan Rosso" used Facebook to advertise European passports and U.S. I-551 documents for sale. Individual-1 stated that he communicated with "Jan Rosso" on Viber and Facebook Messenger to arrange the purchase of fraudulent documents. Defendant Hamdaoui subsequently admitted that he was the sole operator of the Jan Rosso account. The fraudulent documents were mailed to Individual-1 from HAMDAOUI using an address in Istanbul, Turkey.

Subsequent investigation confirmed that Individual-1 sent two payments to HAMDAOUI by Western Union on or about May 18, 2017, and June 14, 2017, for approximately $705.05 and $448.24. Defendant HAMDAOUI retrieved the funds from Western Union on or about May 19,

---

[2] A U.S. lawful permanent resident card, also known as an "LPR card," "alien registration receipt card," "green card," or "I-551," is a document that is proof of U.S. residency. LPR cards are lawfully issued by the U.S. Department of Homeland Security ("DHS"), headquartered in Washington, DC. A U.S. passport is an identification and travel document available to U.S. citizens. U.S. passports are lawfully issued by the U.S. Department of State ("DOS"), headquartered in Washington, DC. A U.S. visa is a document placed into a traveler's passport that allows a citizen of a foreign country to enter the United States. U.S. visas are lawfully issued by DOS.

2017, in Istanbul, Turkey, utilizing his Tunisian passport with his real name as his form of identification.

Public information on the Jan Rosso Facebook page showed Arabic-language, public postings which appeared to advertise passports and visas from the U.S., Canada, and Europe. One posting stated, "we have British passports, European identities, American green cards, Europeans Schengen visa, Canadian Schengen visa, Exchange strictly in Istanbul, serious inquires only via private."

Additional analysis of records from Western Union revealed that beginning in 2014, HAMDAOUI received a total of 14 Western Union transfers from senders located in Germany, The Netherlands, France, Iraq, Ukraine, Jordan, and Turkey. The records also revealed that HAMDAOUI retrieved funds from Western Union in multiple countries, including Tunisia, Ukraine, and Malaysia in 2014; Ukraine in 2015; and Ukraine and Turkey in 2017.

In or around November 2017, an HSI undercover agent ("UCA") initiated contact with the operator of the "Jan Rosso" account. As noted above, HSI identified HAMDAOUI as the operator of the "Jan Rosso" account. The UCA utilized Facebook Messenger to privately communicate with HAMDAOUI. The UCA asked HAMDAOUI if he had any U.S. documents for sale that could be used by the UCA after entering the United States. HAMDAOUI informed the UCA that he could provide an I-551 for the price of $1,100.00.e UCA sent HAMDAOUI a photograph, biographical information, and a payment of $1,000 by Western Union.

On or about January 26, 2018, HAMDAOUI informed the UCA that a package containing the I-551 had been shipped from Turkey to an address provided by the UCA. On February 5, 2018, HSI received the package from a foreign law enforcement liaison in Sterling, Virginia. HSI special agents found the package held one I-551 that had been embedded with the photograph, signature and

biographic information provided by the UCA to HAMDAOUI.  On February 7, 2018, HSI special agents transported the package to the HSI Forensic Document Lab for analysis, which subsequently confirmed the I-551 was counterfeit.

On or about January 2, 2018, and October 25, 2018, HSI special agents executed search warrants on the "Jan Rosso" account used by HAMDAOUI.  A review of the search warrant returns revealed thousands of pages of conversations between HAMDAOUI and clients seeking to purchase fraudulent documents, including U.S. travel documents.

In these conversations, HAMDAOUI and his customers discussed the purchase price of documents, HAMDAOUI asked for biographical information and photos to be included on the documents, and HAMDAUOI sent photos of the documents once they were completed.  A review of the search warrant returns, further indicates that the Rosso account interacted with over 2,000 prospective clients.

In these conversations, HAMDAOUI discussed the purchase price of documents, HAMDAOUI asked for biographical information and photos to be included on the documents, and HAMDAOUI sent photos of the documents once they were completed.  A review of the Jan Rosso account indicates HAMDAOUI charged clients approximately $1,000 for LPR cards and $2-3,000 for passports.

The image below is a screenshot from the Jan Rosso account in which HAMDAOUI communicated with prospective clients and provided a sample of his work.



Additionally, in the communications HAMDAOUI was clear with prospective clients that he has no lawful authority to issue green cards or passports. For example, in one exchange, on May 5, 2017, a Facebook user herein identified as Individual-2 contacted the Rosso account seeking a visa for Germany. Individual-2 asked if the Rosso account could obtain a quicker appointment at the embassy, to which the Rosso account replied, "No brother, I have forged visas." When asked why he would then advertise visas, the Rosso account responded, "Brother, I am advertising visas, passports and identity cards. So it is clear that I am a forger."

Additionally, HAMDAOUI told one client that he hoped he would not be arrested but had a plan for deleting information from his phone if he was. When asked by another client where he learned how to forge documents, HAMDAOUI responded "forging documents was my hobby since I was of young age. In 2014 I learned from a professional forger here in Istanbul. [...] From the most professional forgers in Istanbul." HAMDAOUI told a third client, "I don't receive money under my

name. I always use names of others who have nothing to do with the business. So, if I were to be arrested, there is no evidence against me, such as money transfer and such things."

In one exchange, HAMDAOUI offered to sell and did sell a U.S. passport to Individual-3. From October 24, 2017, through at least November 8, 2018, Individual-3 communicated with the Rosso account via Facebook Messenger. HAMDAOUI told Individual-3 he could make an American passport. HAMDAOUI told Individual-3 he needed a good quality photograph and that the cost of the American Passport was $2,600. According to records from MoneyGram and Western Union, Individual-3 sent the money to HAMDAOUI.

HAMDAOUI told Individual-3 he would send a photo of the completed passport. The photo below, showing a U.S. passport with Individual-3's photo, was sent from HAMDAOUI to Individual-3.



The passport number in the photo is associated with a legitimately-issued U.S. passport reported lost or stolen in Turkey in February 2017.

On February 10, 2018, Individual-3 told HAMDAOUI that the last page of the American passport was cut off, indicating that he was in possession of the physical passport and was able to inspect it.

In November 2019, HAMDAOUI was arrested in Austria after presenting a false Colombian passport to officials with fake Schengen entry and exit stamps. Austrian officials conducted a record check and learned HAMDAOUI was the subject of a German arrest warrant. HAMDAOUI was returned to Germany, and on April 15, 2020, a German Court sentenced HAMDAOUI to imprisonment of 1 year and 4 months in Germany for acquiring false identification documents and smuggling aliens. The sentence was suspended and HAMDAOUI remained in Germany.

In September 2020, HSI interviewed HAMDAOUI in Germany. The interview was conducted in English and held in a conference room in a German police station. HAMDAOUI came to the interview on his own, and HSI paid for a train ticket. HAMDAOUI was not in custody and was not in handcuffs. HAMDAOUI was told the interview was voluntary and signed an English-language foreign advice of rights form. During the interview, HAMDAOUI admitted that he was the sole operator of the Jan Rosso Facebook account. HAMDAOUI told the agent that he knowingly sold fraudulent documents, but he said that the documents were created/altered by a different individual with whom he worked. Additionally, HAMDAOUI admitted that he had purchased airline tickets so that he could get past security in an airport in Turkey in order to pass fraudulent documents in person to his clients and that he shipped fraudulent documents to his clients using DHL.

On October 21, 2020, a grand jury in the U.S. District Court for the District of Columbia indicted HAMDAOUI on one count of Conspiracy to Commit Passport Forgery and Counterfeiting, Visa Fraud, and to Defraud the United States; two counts of Passport Fraud; and 14 counts of Visa Fraud.

The United States subsequently requested that HAMDAOUI be extradited from Germany. A Germany court approved the extradition request for all counts in the indictment except two which

it found to be related to the German charges for which HAMDAOUI was already convicted.[3] Accordingly, extradition was not approved for counts 2 and 4 of the indictment, one charge of passport fraud and one count of visa fraud. Extradition was approved for the remaining counts of the indictment: conspiracy, in part, one count of passport fraud, and 13 counts of visa fraud.

On February 17, 2022, HAMDAOUI was extradited to the United States by Germany.

## SENTENCING FACTORS

The factors the Court is to consider in imposing a sentence are set forth in 18 U.S.C. § 3553(a). These factors include the nature and circumstance of the offense, the history and characteristics of the defendant, the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense, to afford adequate deterrence to criminal conduct, to protect the public from further crimes of the defendant, to provide the defendant with needed correctional treatment and the need to avoid unwarranted sentence disparities.

**Nature and Circumstances of the Offense**

This is a serious offense. The defendant provided forged and altered U.S. documents to numerous unknown persons. The total number of fraudulent documents is unknown, but HAMDAOUI communicated with over 2,000 individuals from many different countries who were interested in obtaining travel documents from him. HAMDAOUI sold travel documents to some individuals who apparently did not have legitimate travel documents for the purpose of crossing international borders.

---

[3] Specifically, the German court denied the extradition for charges related to HAMDAOUI's dealings with one of his client's, M.D., because it found that HAMDAOUI had been convicted in Germany for acts related to M.D. Additionally, the German court denied extradition for the conspiracy charge as it related to overt acts concerning M.D., but approved extradition for the conspiracy charge as it related to several other individuals.

If the individuals that purchased the fraudulent documents from the defendant were able to legally obtain legitimate documents from the U.S. government, they would have done so – legitimate documents would have been cheaper.  Obviously, the purchasers were not eligible to obtain legitimate documents and for unknown reasons may have wanted them for reasons that would be harmful to this nation.

Enabling individuals to travel internationally while disguising their true identity and without lawful authority to do so, creates a potentially dangerous situation in which criminals may be able to undertake clandestine travel for sinister purposes.  While the Government is unaware of the intentions of the individuals to whom HAMDAOUI sold and offered to sell false documents, he may have knowingly or unknowingly sold such documents to any type of criminals.  There is scant evidence in the records of HAMDAOUI's communications with his prospective clients that he performed any type of due diligence to verify the travel purpose of his buyers.

In addition, HAMDAOUI's offense contributed to the international black marketplace for lost and stolen travel documents.  The fraudulent travel documents sold by HAMDAOUI were frequently produced using genuine travel documents that were reported lost or stolen and subsequently altered.  For example, the U.S. passport that HAMDAOUI sold to Individual-3 was a genuine U.S. passport that had been reported lost or stolen in Turkey, which was subsequently altered.  In other communications, HAMDAOUI made clear that he acquired real travel documents that had been obtained from their rightful owners.  While there is no evidence that HAMDAOUI himself stole documents, his crimes supported a supply chain that rewarded the theft of passports and other documents from their legitimate owners.

**History and Characteristics of the Defendant**

There are lots of unknowns regarding the defendant's history and characteristics. We are relying heavily upon information that has been for the most part provided by the defendant and is unverified by other reliable sources. We do know that the defendant started and maintained a business based on fraud and deceit, and he admitted engaging in other fraudulent activities beyond the specific facts for which he was charged.

HAMDAOUI is a Tunisian national who lived in Istanbul Turkey. In 2019, he was arrested in Austria after presenting a false Colombian passport to officials with fake Schengen entry and exit stamps. HAMDAOUI was then transported to Germany, where he was the subject of a German arrest warrant and was convicted in Germany and sentence to imprisonment of 1 year and 4 months for acquiring false identification documents and smuggling aliens.

Additionally, during a pre-arrest voluntary interview with the Government, HAMDAOUI stated he was arrested on July 18, 2019, by Turkish law enforcement at the Istanbul international airport. HAMDAOUI stated he was caught in the transit area with 17 documents, 15 Iraqi passports and two Moroccan passports, which he was supposed to pass to arriving passengers. HAMDAOUI stated he would purchase a cheap airline ticket, enabling him to enter the transit area of the Istanbul airport, where he would subsequently pass documents to arriving passengers.

**Need for Sentence to Reflect Seriousness of the Offense, Promote Respect for the Law, Provide Just Punishment, Accord Adequate Deterrence, Protect the Public and Provide Correctional Treatment**

A sentence within the guidelines would reflect the seriousness of the offense, promote respect for the law, provide just punishment, accord adequate deterrence, and protect the public.

HAMDAOUI is not the only international travel document forger that operates on the internet. In fact, HAMDAOUI himself conspired with other individuals who forged and sold

travel documents. A sentence at the high end of the guidelines would provide general deterrence for other such individuals.

Additionally, HAMDAOUI himself continued to engage in continued document fraud even after he was arrested by authorities in Turkey. A sentence at the high end of the guidelines would provide specific deterrence that there is a serious punishment for this crime and promote respect for the law. The defendant does not appear to be in need of correctional treatment.

**Sentencing Guidelines / Need to Avoid Sentencing Disparities**

The government estimated the following guidelines calculation[4]: The base offense level for passport fraud and visa fraud according to the United States Sentencing Guidelines (U.S.S.G. § 2L2.1 is 11. The following Specific Offense Characteristics apply: + 3 was added because the offense involved six or more documents or passports, +4 was added because the offense involved a fraudulently obtained or used U.S. passport. This resulted in an adjusted offense level of 18 minus 3 for acceptance of responsibility resulting in a total offense level of 15 with a Criminal History Category of I. The defendant's sentencing guidelines range as estimated by the government is 18-24 months.

Factually similar cases have resulted in similar sentences to the sentence being requested by the government. While the government was not able to find many cases of defendants who were prosecuted for their involvement in schemes to produce and sell false identification documents, the following two cases are instructive.

In United States v. Christ, 513 F.3d 762, 764 (7th Cir. 2008), a jury convicted the defendant of one count of conspiring to commit visa fraud, finding that he fraudulently facilitated the issuance of visas to certain Lithuanian citizens. The defendant was a foreign

---

[4] At this stage, we are unaware of the guideline calculation of the probation department.

service officer at the U.S. embassy in Lithuania, who conspired with other individuals to issue the fraudulent visas. The defendant was sentenced to 24 months in prison, which included a sentencing enhancement for six or more fraudulent visas. In United States v. Lopez-Garcia, No. 15-cr-67 (W.D. Mich.) (Sep. 14, 2015), the defendant pled guilty to one count of conspiracy to produce and traffic in counterfeit immigration document in violation of 18 U.S.C. 1546. The defendant admitted that he produced counterfeit identification documents that could be used for immigration purposes and regularly solicited illegal aliens in need of Permanent Resident Cards and Social Security Account Number Cards, obtained biographical information from them including their photograph, and then produced the counterfeit documents at his apartment. The Court sentenced defendant to 36 months incarceration.

**Recommendation**

For the reasons stated above, the United States recommends that the Court sentence the defendant to a term of incarceration within the guidelines range of 24 months.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By: /s/ Brenda J. Johnson
Brenda J. Johnson
Assistant United States Attorney
D.C. Bar No. 3707373

KENNETH A. POLITE, JR.
Assistant Attorney General
Criminal Division

By: /s/ Brian Morgan
Brian Morgan
Trial Attorney
NY Bar No. 4276804